## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS WRIGHT, <br><br> Plaintiff, <br><br> v. <br><br> ADMINISTRATION FOR CHILDREN AND FAMILIES, (U.S. Department of Health and Human Services), <br><br> Defendant. | Civil Action No. 15-218 <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, Chris Wright, who is proceeding *pro se*, brings this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the defendant Administration for Children and Families ("ACF"), which is a division of the U.S. Department of Health and Human Services ("HHS"), challenging the agency's response to his request for "information for use in news stories about unaccompanied alien children[1] . . . and the government's shelter program." Compl. ¶ 3, ECF No. 1; Answer ¶ 4, ECF No. 9. Having already granted partial summary judgment to HHS, pursuant to the parties' Joint Stipulation of Issues to be Briefed, ECF No. 12, *see* Order (Aug. 3, 2015), ECF No. 13, pending before the Court is HHS's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 16, on the four remaining issues in the case. For the reasons set out below, HHS's motion is granted.

---

[1] "Unaccompanied alien children" refers to "unaccompanied foreign children who illegally enter the United States from countries that do not border the United States," for whom "[t]he U.S. Department of Health and Human Services is required by law to take custody . . . and provide care . . . ." Def.'s Mot., Ex. 1, Decl. of Kimberly Epstein ("Epstein Decl.") ¶¶ 7, 10, ECF No. 16-1; *see also* Def.'s Statement Material Facts ("Def.'s SMF") ¶¶ 1–3, ECF No. 16.

# I.    BACKGROUND

The plaintiff explains that "[t]his case relates to the 'border surge' in the summer of 2014, the high-profile influx of [unaccompanied alien children] which generated voluminous news coverage." Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 19. In a FOIA request transmitted via email on October 24, 2014, the plaintiff requested records from ACF regarding fifteen categories of information ("Items 1–15") related to "grant award 90ZU0102 in the amount of $190,707,505," made to Baptist Children and Family Services (now BCFS Health and Human Services) ("BCFS") for the provision of residential shelter services to unaccompanied alien children. Compl. Ex. 1 ("Pl.'s Request") at 1–2, ECF No. 1. Relevant here, one of those fifteen categories of information was described by the plaintiff as "[n]arrative status reports" ("Item 1"). *Id.* at 1. The plaintiff also requested five broader categories of information ("Items 16–20") "[w]ith respect to BCFS and related entities in general," regarding (a) "discussions of why these organizations maintain an office, employees, or agents outside of the United States"; (b) "BCFS' grants or assistance to foreign governments, organizations, and individuals"; (c) "BCFS' grants or assistance to governments, organizations and individuals in the United States for Education Training Vouchers [ETVs]"; (d) "BCFS' grants or assistance to governments, organizations and individuals in the United States for ORR allowance grants"; and (e) "discussion of BCFS' failure to properly report lobbying expenditures on its tax forms." *Id.* at 2.

On December 10, 2014, an ACF Freedom of Information Officer acted upon the plaintiff's email request by requesting a search for responsive records from the ACF Office of Refugee Resettlement ("ACF-ORR"), which "has jurisdiction over funding the unaccompanied minors residential services program and monitors grantee performance," and the ACF Office of

Grants Management ("ACF-OGM"), which "has jurisdiction over financial management and reporting for all ACF grant programs." Def.'s Mot., Ex. 1, Decl. of Kimberly N. Epstein ("Epstein Decl.") ¶¶ 10–11.

As of February 12, 2015, when the plaintiff filed the Complaint in this action, HHS had released no documents or information to the plaintiff in response to his request. *See generally* Compl.; Epstein Decl. ¶ 28. Between March 2, 2015, and September 2, 2015, however, HHS made fourteen separate releases of information in response to the plaintiff's request, totaling many hundreds of pages. Epstein Decl. ¶ 28; Pl.'s Opp'n at 2–3. These releases included, *inter alia*, financial reports, Performance Progress Reports ("PPRs"), Situation Reports, monitoring reports, internal memoranda, and emails among various ORR and ACF staff and executives regarding BCFS's grant award 90ZU0102. Epstein Decl. ¶ 28.

HHS construed the plaintiff's request for "narrative status reports" (Item 1), a term HHS does not itself use in categorizing its documents, as a request for PPRs and Situation Reports in connection with BCFS's grant award 90ZU0102. *Id.* ¶¶ 15–16. Employing that construction of the term, HHS released to the plaintiff, *inter alia*, "all [PPRs] concerning BCFS for grant number 90ZU0102" produced between July 7, 2014, the date the grant was awarded, and December 10, 2014, the date the search for responsive records commenced, Def.'s SMF ¶¶ 9, 16, as well as all Situation Reports sent by BCFS to ACF-ORR Federal Field Specialists during that time frame, *id.* ¶¶ 19–22.

With respect to the plaintiff's requests for more generalized information regarding BCFS' domestic and foreign operations (Items 16–20), "OGM and ORR officials advised [the ACF FOIA Officer] that ACF does not routinely collect or maintain information responsive to [Items 16–20] as they are outside the scope of the relationship with the grantee." Epstein Decl. ¶ 26.

3

Nevertheless, an electronic search of the ACF-OGM and ACF-ORR files containing grantee records and programmatic and financial reports was performed, using key words drawn from the request, *i.e.*, "lobbying," "ETV," and "foreign government." *Id.* ¶¶ 23–24. According to HHS, no responsive documents were found. *Id.*

Many of the documents released to the plaintiff were partially redacted pursuant to FOIA Exemptions 4, 5, 6, and 7(C).[2] *Id.* ¶ 28. In August and September 2015, upon the determination that Exemption 5 did not actually apply, HHS voluntarily released full, non-redacted versions of two documents that were initially released to the plaintiff with redactions under FOIA Exemption 5. *Id.* The two documents that remain partially redacted under Exemption 5, as listed in the agency's *Vaughn* Index, consist of emails compiled from the accounts of various agency officials, with redactions on about half, or nineteen, of the thirty-nine total pages. Def.'s Mot. Ex. 3, *Vaughn* Index, ECF No. 16-3. Larger portions of these documents were redacted when initially released on July 20, 2015 and July 22, 2015, but those were later supplemented with versions containing fewer redactions, released on July 27, 2015 and August 18, 2015, respectively, to "provide consistent disclosure." Epstein Decl. ¶ 28.

## II.    LEGAL STANDARD

Congress enacted the FOIA as a means "to open agency action to the light of public scrutiny," *ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)), and "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to

---

[2]    The plaintiff does not contest any of the redactions made pursuant to Exemptions 4, 6, or 7(C), which protect "trade secrets and commercial or financial information obtained from a person and privileged or confidential;" "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;" and "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(4)–(7).

the public on request," *DiBacco v. U.S. Army,* 795 F.3d 178, 183 (D.C. Cir. 2015) (citing *U.S. Dep't of Justice v. Julian,* 486 U.S. 1, 8 (1988)).  As the Supreme Court has "consistently recognized[,] . . . the basic objective of the Act is disclosure."  *Chrysler Corp. v. Brown,* 441 U.S. 281, 290 (1979).  At the same time, the statute represents a "balance [of] the public's interest in governmental transparency against legitimate governmental and private interests [that] could be harmed by release of certain types of information."  *United Techs. Corp. v. U.S. Dep't of Def.,* 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks and citations omitted). Reflecting that balance, the FOIA contains nine exemptions set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed."  *Milner v. U.S. Dep't of Navy,* 562 U.S. 562, 565 (2011) (internal quotation marks and citations omitted) (citing *FBI v. Abramson,* 456 U.S. 615, 630 (1982)); *see Murphy v. Exec. Office for U.S. Attys.,* 789 F.3d 204, 206 (D.C. Cir. 2015); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW*"), 746 F.3d 1082, 1088 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget,* 598 F.3d 865, 869 (D.C. Cir. 2010).  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Rose,* 425 U.S. at 361.

The agency invoking an exemption to the FOIA has the burden "to establish that the requested information is exempt."  *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 352 (1979); *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 755 (1989); *DiBacco,* 795 F.3d at 195; *CREW,* 746 F.3d at 1088; *Elec. Frontier Found. v. U.S. Dep't of Justice,* 739 F.3d 1, 7 (D.C. Cir. 2014), *cert. denied sub nom. Elec. Frontier Found. v. Dep't of Justice,* 135 S. Ct. 356 (2014); *Assassination Archives & Research Ctr. v. CIA,* 334 F.3d 55, 57 (D.C. Cir. 2003).  To carry this burden, an agency must submit

sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents,[3] or both, to demonstrate that the government has analyzed carefully any material withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and to enable the adversary system to operate by giving the requester as much information as possible, on the basis of which the requester's case may be presented to the trial court. *See Oglesby v. U.S. Dep't of Army (Oglesby II),* 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection . . . [which] serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision." (citation omitted)); *see also CREW,* 746 F.3d at 1088 ("The agency may carry that burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Larson v. U.S. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009)). While "an agency's task is not herculean[,]" it must "describe the justifications for nondisclosure with reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption." *Murphy,* 789 F.3d at 209 (internal quotation marks omitted) (citing *Larson,* 565 F.3d at 862).

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B), and "directs district courts to determine *de novo* whether non-disclosure was permissible," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.,* 777

---

[3]     "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels,* 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015).

F.3d 518, 522 (D.C. Cir. 2015).  A district court must review the *Vaughn* index and any supporting declarations "to verify the validity of each claimed exemption." *Summers v. U.S. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C. Cir. 1998).  Moreover, a district court has an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information.  *Elliott v. U.S. Dep't of Agric.,* 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue *sua sponte*") (quoting *Morley v. CIA,* 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *see Stolt–Nielsen Transp. Grp. Ltd. v. United States,* 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (quoting *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Trans–Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[W]e believe that the District Court had an affirmative duty to consider the segregability issue *sua sponte* . . . even if the issue has not been specifically raised by the FOIA plaintiff."); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

Summary judgment is appropriate when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56.  "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)).  "Ultimately, an agency's justification for invoking

a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.,* 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson,* 565 F.3d at 862 (quoting *Wolf v. CIA,* 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

## III.   DISCUSSION

The plaintiff's requests for Item 1 and Items 16–20 are the only requests that remain at issue following this Court's Order granting partial summary judgment to HHS. Order ¶¶ 1–2. For these Items in his original request, the plaintiff contends that summary judgment should be denied because: (1) HHS failed to perform an adequate search for responsive materials; and (2) the deliberative process privilege does not warrant redaction of the documents produced. Pl.'s Reply Supp. Mot. Opp'n ("Pl.'s Reply") at 2–4, 7–9, ECF No. 21. The discussion that follows addresses these issues *seriatim*.

### A.   ADEQUACY OF THE AGENCY'S SEARCH

The plaintiff criticizes the adequacy of the search conducted by ACF for responsive documents for several reasons. First, the plaintiff complains that the search did not include ACF-ORR "[r]egional offices" in Texas and Oklahoma; the "Office of the Secretary"; "former employees"; "consultations with agency personnel concerning the grant and controversies in question"; and "[o]ther record systems." Pl.'s Opp'n at 3–5. Second, the plaintiff asserts that the methods used to search email accounts, and the "lack of description in the FOIA Officer's Declaration of what is meant by searches of email accounts," support a finding of inadequacy. *Id.* at 6–7. Relatedly, the plaintiff argues that the personal communications of relevant personnel are subject to the FOIA and requests sworn declarations from all relevant agency personnel attesting "they did not use personal email, instant messaging, or text accounts to conduct official

business" related to his request. *Id.* at 8–11. Finally, the plaintiff contends that Items 16–20 "extend to all BCFS entities, not just BCFS HHS, and is not limited to the grant otherwise at issue in this case," but that HHS improperly searched only for records relating to BCFS HHS and grant award 90ZU0102. *Id.* at 3–7. HHS defends its "search for responsive records [as] both adequate and reasonable," because "a comprehensive search was performed for documents responsive to [the plaintiff's] request, including of the email boxes of all persons copied on responsive emails." Def.'s Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") at 7, ECF No. 16.

### 1.   *Applicable Legal Principles*

Upon receiving a FOIA request, federal agencies are "required to perform more than a perfunctory search" to identify potential responsive records, *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), and must demonstrate "a 'good faith effort to conduct a search using methods which can be reasonably expected to produce the information requested,'" *DiBacco*, 795 F.3d at 188 (internal alterations omitted) (quoting *Oglesby v. U.S. Dep't of Army (Oglesby I)*, 920 F.2d 57, 68 (D.C. Cir. 1990)). To meet this burden, the agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). At the summary judgment stage, an agency may meet this burden by submitting "'[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Ancient Coin Collectors Guild*, 641 F.3d at 514 (quoting *Valencia–Lucena*, 180 F.3d at 326). Such an affidavit must "'explain in reasonable detail the scope and method of the search

conducted by the agency.'" *See Morley,* 508 F.3d at 1121 (quoting *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982)).

Although an agency "has a duty to construe a FOIA request liberally," *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 1995), the FOIA "demands only a reasonable search tailored to the nature of a particular request." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate. . . . Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted). Thus, "[t]here is no requirement that an agency search every record system," although "the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby I,* 920 F.2d at 68. Furthermore, agencies are not obligated to search "beyond 'the four corners of the request,' nor are they 'required to divine a requester's intent.'" *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)).

If an agency has made a *prima facie* showing of the adequacy of its search, "[t]he plaintiff may then provide 'countervailing evidence' as to the adequacy of the agency's search. . . . 'If a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate.'" *Iturralde*, 315 F.3d at 314 (internal quotation marks omitted) (quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979); then quoting *Valencia-Lucena*, 180 F.3d at 326).

2.    *Analysis*

The plaintiff's first criticism of the agency's search is that certain locations, such as regional offices, the Office of the Secretary, unnamed former employees, and other record systems, were not searched for records responsive to Items 1 and 16-20. Evaluating whether the search conducted by the agency was properly and reasonably focused to uncover responsive records turns on the nature of the request. *See Campbell*, 164 F.3d at 28 ("[The] FOIA demands only a reasonable search tailored to the nature of a particular request."). The plaintiff's request in Item 1 for "narrative status reports," which is not a term used by the agency, regarding the identified grant to BCFS was construed liberally, with HHS identifying categories of records believed to be within the intent of the plaintiff's request. Epstein Decl. ¶ 15. Specifically, this term was construed to refer to PPRs, quarterly and annual reports provided to the agency by grantees, and Situation Reports, which "were sent [to the agency] by BCFS-HHS via email . . . to provide updates on the emergency situation of providing residential services to the sudden large influx of unaccompanied children during the summer of 2014." *Id.* at ¶ 15–16. Based on this construction of Item 1, HHS then identified the two offices where "the requested records were most likely to be located," *id.* ¶ 10, and searched their electronic databases as well as the "individual email accounts" of relevant personnel, *id.* ¶ 14; hired an outside consultant to retrieve responsive documents identified as outstanding, *id.* ¶ 20; and ultimately released, over the course of several disclosures, more than seventy PPRs and Situation Reports to the plaintiff, *id.* ¶¶ 15–21.

In regard to Items 16–20, which sought categories of information "[w]ith respect to BCFS-HHS and related entities in general," Pl.'s Request at 2, the ACF FOIA Officer explains that she consulted a number of officials at OGM and ORR regarding "other locations that should

be searched" for responsive documents.  Epstein Decl. ¶ 25.  She avers those officials "advised [her] that ACF does not routinely collect or maintain information responsive to these items as they are outside the scope of the relationship with the grantee."  *Id.* ¶ 26.  Nevertheless, OGM and ORR performed searches for responsive documents but, consistent with the information that no such records are kept by the agency, the search uncovered no responsive records. *Id.* ¶ 22–24.

The plaintiff complains that the search for documents responsive to his requests for Item 1 and Items 16–20 was inadequate because the agency did not search all the locations he thinks should have been searched.  *See* Pl.'s Opp'n at 3–5.[4]  To the contrary, an agency's failure to take every step desired by a requester does not automatically render the search not "reasonably calculated to uncover all relevant documents."  *Valencia-Lucena*, 180 F.3d at 325 (internal quotation marks omitted).  With respect to Item 1, the ACF FOIA officer has explained that all responsive PPRs and Situation Reports were identified, specifically noting that the "OGM maintains PPRs in the Grant Notes section of grantee files," that it "provided the BCFS-HHS PPRs for grant number 90ZU0102" to the plaintiff, and that "all Situation Reports that were responsive were provided to the requester."  Epstein Decl. ¶¶ 17–21.  The plaintiff has not pointed to any "positive indications of overlooked materials," nor has he shown that the "agency has reason to know that certain places [not searched] may contain" additional documents responsive to Item 1.  *Valencia-Lucena*, 180 F.3d at 326–27.

Similarly, with respect to Items 16–20, HHS has demonstrated that the scope of its search of offices, records systems, and employees was adequate.  The ACF FOIA Officer attests she

---

[4]       The cases relied upon by the plaintiff do not dictate a result in his favor.  For example, in *Church of Scientology v. IRS*, 792 F.2d 146 (D.C. Cir. 1986), cited by the plaintiff, *see* Pl.'s Opp'n at 3, the D.C. Circuit concluded that the plaintiff was not entitled to its requested search of regional offices of the IRS in view of the requester's failure to comply with the IRS's rules requiring such requests be made to the regional offices directly. *Church of Scientology*, 792 F.3d at 150.  At best, the cited cases demonstrate no more than that the locations plaintiff identifies may in some circumstances properly be searched in response to a FOIA request.

was advised by OGM and ORR officials that "ACF is unlikely to have responsive records as these matters lie outside the scope of ACF's relationship with its grantees." Epstein Decl. ¶ 22. Specifically, she notes that applicable regulations "state that an agency may solicit only the standard, OMB-approved government-wide data elements for collection of financial information," which would bar the collection of the information requested in Items 16–20. *Id.* ¶ 26. On that basis, the ACF FOIA Officer "determined that ACF is not reasonably likely to be in possession of records responsive to Items 16–20 of the request." *Id.* Notwithstanding this conclusion, the OGM and ORR identified the files they deemed *most* likely to contain responsive documents, if any existed, and searched those files using parameters derived from the plaintiff's request. *See id.* ¶ 23–24.

Having attested to the unlikelihood of the existence of any responsive agency records, HHS was not required to perform the more exhaustive search the plaintiff apparently demands.[5] On the contrary, an agency is only required to search record systems "likely" to yield responsive documents. *See, e.g., Ancient Coin Collectors Guild*, 641 F.3d at 514 (noting agency must "aver[] that all files likely to contain responsive materials (if such records exist) were searched" (quoting *Valencia–Lucena*, 180 F.3d at 326)). Consequently, courts have found searches adequate where *no* search was performed of entities "unlikely" to possess responsive documents. *See All Party Parliamentary Grp. on Extraordinary Rendition v. U.S. Dep't of Def.*, 134 F. Supp.

---

[5]       The plaintiff asserts that "[g]iven the [d]efendant's credibility problems, the court should not rely on [its] pronouncement. . . . It is not credible that there is no record of any discussion with a politically-connected CEO or other BCFS representative concerning the controversy about BCFS' lobbying expenditures or its foreign activities . . . ." Pl.'s Opp'n at 5. Yet, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)); see also *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases"). The plaintiff's assertions amount to nothing more than speculation, and, accordingly, cannot overcome the agency's attestation as to the likelihood of the existence of documents to Items 16–20.

3d 201, 206 (D.D.C. 2015) ("The NSA . . . argues that, because its function is limited solely to signals intelligence, it is unlikely to possess any [responsive] documents . . . and is not required to search its records. . . . The Court agrees and concludes that a search for the documents requested would be futile . . . ."); *Reyes v. EPA*, 991 F. Supp. 2d 20, 26 (D.D.C. 2014) ("Where the Government's declarations establish that a search would be futile[,] the reasonable search required by FOIA may be no search at all." (quoting *Amnesty Int'l USA v. CIA*, No. 07-Civ.-5435, 2008 WL 2519908, at *11 n.17 (S.D.N.Y. June 19, 2008))); *Brehm v. Dep't of Defense*, 593 F. Supp. 2d 49, 50 (D.D.C. 2009) (finding search adequate based on, *inter alia*, the declarant's "conclusion that 'it is unlikely that other CIA directorates would possess records responsive to Plaintiff's request'"); *cf. Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 72 (D.D.C. 2014) ("[A]n attestation that the agency searched filing systems 'likely to contain responsive records' also requires an accompanying averment that 'it is unlikely that other directorates would possess records responsive to Plaintiff's request.'" (quoting *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 230 (D.D.C. 2013) (alterations omitted)).

The plaintiff next complains that summary judgment should be denied "because of a lack of description in the FOIA Officer's Declaration of what is meant by searches of email accounts," *id.* at 6, urging that more detail, *e.g.*, information regarding "[h]ow . . . Boolean operators [were] treated," *id.*, should have been included. Contrary to the plaintiff's assertion, the ACF FOIA Officer sufficiently described the manner in which email accounts were searched, noting that the agency searched "the email boxes of the Federal Field Specialists and any other individuals assigned to BCFS-HHS" for Situation Reports and, upon discovering that twenty-two Situation Reports "remained outstanding," hired a consultant, which searched "six mailboxes of

central office staff and Federal Field Specialists," using the search terms "'BCFS' plus 'SitRep' (the short-hand term BCFS-HHS used for Situation Reports) plus 'Ft. Sill' and/or 'Lackland' and/or 'Juliet' and/or 'Kilo' (the short-hand terms BCFS-HHS used for the Ft. Sill and Lackland sites)" and identifying the dates of the missing Situation Reports. Epstein Decl. ¶ 17–20; *see Ancient Coin Collectors Guild*, 641 F.3d at 514 (explaining "a court may rely on a *reasonably detailed* affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched") (emphasis added).

Accordingly, the Court is not persuaded that the criticisms raised by the plaintiff of the agency's searches for documents responsive to Item 1 and Items 16–20 raise sufficient genuine issues of material fact to deny summary judgment to HHS.

### 3.    *Personal Email Accounts of Agency Officials*

The plaintiff's FOIA request specifically asked that HHS search, among other records, "electronic mail (including from personal accounts)" for responsive materials. Pl.'s Request at 1. In support of that search, the plaintiff asserts a "substantial likelihood that personal accounts were used to evade public scrutiny in this case," citing the lack of responsive information found as to Items 16–20 as support for his theory of intentional evasion. Pl.'s Opp'n at 10. Alternatively, the plaintiff seeks an order "requir[ing] all agency officials involved with administering the grant in question or with any BCFS entity more generally to submit a sworn declaration that they did not use personal email, instant messaging, or text accounts to conduct official business with respect to the oversight of grant award 90ZI0102 or Items 16–20 of [the plaintiff's] FOIA request," a request which "extends up to and include[s] the Secretary of HHS and all other political appointees." *Id.* at 11; *see* Pl.'s Reply at 7.

HHS takes exception to the plaintiff's requested form of relief, asserting that the "FOIA does not provide a statutory mechanism to evaluate whether agency employees are complying with rules requiring them to conduct agency business on their official email accounts instead of personal accounts." Def.'s Reply Supp. Def.'s Mot. Summ. J. ("Def.'s Reply") at 10, ECF No. 20. Moreover, HHS points out that employees' personal accounts "are not within an agency's possession or control and thus are not part of an agency's search obligation," and that "the proper mechanism for reviewing the employee's conduct would be an administrative proceeding under the Federal Records Act, not FOIA." *Id.* at 10–11.

Indisputably, the FOIA extends only to materials qualifying as "agency records." 5 U.S.C. § 552(a)(4)(B); *see U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 141 (1989) (noting 5 U.S.C. § 552(a)(4)(B) "confers jurisdiction in the district courts when 'agency records' have been 'improperly withheld'"). The Supreme Court has explained that "agency records" include only those records "either create[d] or obtain[ed]" by an agency and subject to its control "at the time the FOIA request is made." *Tax Analysts*, 492 U.S. at 144–45. "Control" means "that the materials have come into the agency's possession in the legitimate conduct of its official duties," although "the term 'agency records' is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency." *Id.* at 145. Thus, generally speaking, personal communications of agency employees are not subject to the FOIA.

The D.C. Circuit recently clarified the scope of the FOIA's "agency record" requirement in *Competitive Enterprises Institute v. Office of Science & Technology Policy*, 827 F.3d 145 (D.C. Cir. 2016). In that case, the plaintiff requested from the Office of Science and Technology Policy ("OSTP") "all policy/OSTP-related email sent to or from" OSTP's director's "nonofficial

[email] account." *Id*. at 146. The district court granted the agency's motion to dismiss on the ground that the requested emails were not "agency records" because they were "not under the control of the agency." *Id*. at 147. The D.C. Circuit reversed, *see id*. at 150, rejecting the agency's argument that the requested records "were in an account that is under the control of . . . a private organization" on the basis that "the [account's] *user* . . . maintains the account," not the domain host, *id*. at 147 (emphasis added) (internal quotation marks omitted). The Court explained that "an agency always acts through its employees and officials. If one of them possesses what would otherwise be agency records, the records do not lose their agency character just because the official who possesses them takes them out the door . . . ." *Id*. at 149. Consequently, the Court concluded that "[i]f the agency head controls what would otherwise be an agency record, then it is still an agency record and still must be searched or produced." *Id*.

Thus, *Competitive Enterprises* established that agency employees' communications on non-agency accounts may constitute "agency records" subject to the FOIA. Nevertheless, "a FOIA requestor is not entitled to a search of files specified by the requestor, but rather to a search of files 'that are likely to turn up the information requested.'" *Tunchez v. U.S. Dep't of Justice*, 715 F. Supp. 2d 49, 54 (D.D.C. 2010) (quoting *Oglesby I*, 920 F.2d at 68). With respect to official communications created on agency employees' personal accounts, throughout the period of time for which documents generated are subject to the plaintiff's request, federal law has required that such communications be preserved within and by the agency. *See* 36 C.F.R. § 1236.22(b) (effective Nov. 2, 2009) ("Agencies that allow employees to send and receive official electronic mail messages using a system not operated by the agency must ensure that Federal records sent or received on such systems are preserved in the appropriate agency recordkeeping system."); *see also* 44 U.S.C. § 2911(a) (effective Nov. 26, 2014) (prohibiting agency

employees from "creat[ing] or send[ing] a record using a non-official electronic messaging account," unless they properly document said record with the agency). In view of this requirement, the presumption applies that agency employees comply with applicable law and, consequently, that agency records responsive to a FOIA request would unlikely be located solely in their personal email accounts, rendering a search of those accounts unnecessary. *See, e.g., Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("Ordinarily, we presume that public officials have 'properly discharged their official duties.'" (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)); *Stone v. Stone*, 136 F.2d 761, 763 (D.C. Cir. 1943) ("In an action which challenges the conduct of a public officer, a presumption of law is indulged in his favor that his official duties were properly performed.").

This presumption may be subject to rebuttal, but the plaintiff concedes that he "has no specific information that agency personnel conducted official business through personal email in this case" and, in fact, explains that the agency's "former counsel . . . advised [the plaintiff] that he had consulted agency personnel and had no reason to believe they used personal email to conduct official business." Pl.'s Opp'n at 8–9. Nevertheless, the plaintiff contends that "it cannot be the law that representations of government counsel are dispositive of the issue." *Id.* at 9. The plaintiff misconstrues the nature of *his* burden to submit "countervailing evidence" to raise a "substantial doubt" as to the adequacy of the agency's search. *See Iturralde*, 315 F.3d at 314. In other words, the requester bears the burden of rebutting the presumption of good faith required to be accorded to the agency's declarations, and the plaintiff has not overcome the presumption that agency records are unlikely to exist on the agency employees' personal accounts. *See Hodge v. FBI,* 703 F.3d 575, 582 (D.C. Cir. 2013) (upholding agency response to FOIA request where requester "has not presented sufficient evidence to rebut . . . presumption"

accorded to the agency's averments); *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (recognizing substantial weight traditionally accorded agency affidavits in FOIA "adequacy of search" cases).

While *Competitive Enterprises* suggests that this presumption may be rebutted by, *e.g.*, evidence "from a *Vaughn* Index in another, earlier FOIA litigation that the [agency employee's private email] address had apparently been used for some work-related correspondence," *Competitive Enter. Inst.*, 827 F.3d at 146, the plaintiff has pointed to no such evidence in this case. Accordingly, the plaintiff's purely speculative contentions cannot render the agency's search inadequate. Moreover, in view of the limited remedies available pursuant to the FOIA, the plaintiff's request for sworn declarations from all agency officials must be rejected. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002) ("FOIA represents . . . a comprehensive scheme, which provides requesters with the potential for injunctive relief only, either to enjoin the withholding of documents or to compel production of agency records.").

Accordingly, the Court finds that the agency's search for responsive records was adequate.

**B.      FOIA EXEMPTION 5: DELIBERATIVE PROCESS PRIVILEGE**

Two of the documents released to the plaintiff were partially redacted under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), the "deliberative process privilege." *See Vaughn* Index. These documents were comprised of "emails between HHS staff," which the agency asserts meet the Exemption 5 criteria. Def.'s Mem. at 7. Citing HHS's "lack of credibility," the plaintiff questions the veracity of the description of the withheld information provided by the agency in its *Vaughn* Index. Pl.'s Opp'n at 7. Noting "[t]he deliberative process privilege is negated by

the government misconduct exception," and thus does not protect "illicit discussions undertaken with nefarious or political motives" from disclosure, *id.* at 7–8, the plaintiff asks this Court to "review all redactions *in camera*," *id.* at 7.

### 1.    *Applicable Legal Principles*

The deliberative process privilege, 5 U.S.C. § 552(b)(5), "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,'" *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)), so as to encourage "open and frank discussion" among government officials, *Klamath Water*, 532 U.S. at 9. "To qualify for the deliberative process privilege, an intra-agency [communication] must be both pre-decisional and deliberative." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)); *Whitaker v. U.S. Dep't of State*, No. 14-5275, 2016 U.S. App. LEXIS 1086, at *3–4 (D.C. Cir. Jan. 21, 2016) (per curiam) (internal quotation marks and citation omitted) ("To fall under the privilege's penumbra, documents must be both pre-decisional and deliberative.").

In general, a "document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft,* 421 U.S. 168, 184 (1975)); *see also Leopold v. CIA*, 89 F. Supp. 3d 12, 19 (D.D.C. 2015) (quoting *Petroleum Info. Corp., 976* F.2d at 1434). While the D.C. Circuit has observed that the "term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (citing

*Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)), "'deliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue," *id.* (citing *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

The deliberative process privilege "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Loving*, 550 F.3d at 38 (citing *Army Times Publ'g Co. v. Dep't of Air Force,* 998 F.2d 1067, 1071 (D.C. Cir. 1993)). The D.C. Circuit has held that an agency may satisfy its segregability obligations by (1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material. *See, e.g.*, *id.* at 41 (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Johnson*, 310 F.3d at 776 (upholding agency's segregation efforts based on "comprehensive *Vaughn* index" and "the affidavits of" agency officials).

    **2.**    *Analysis*

"Here, portions of two documents comprised of emails totaling 39 pages [were] withheld in part pursuant to the deliberative process privilege." Epstein Decl. ¶ 31. As reflected in HHS's *Vaughn* Index, the redactions affect eight separate emails among members of ACF or HHS staff. *See Vaughn* Index. The ACF FOIA officer attests that the first of the two documents, released to the plaintiff on August 18, 2015, "discusses possible and optimal uses of unspent funds and the effect of the unspent funds on requests for future funding for the ORR program," and that "[t]he redacted portions of the emails contain staff and grantee personnel opinions and proposals about

the funds before ACF made a final decision as to use of the funds and whether to request future funding for the ORR program." *Id.* ¶ 33. She further attests that the second document, released to the plaintiff on July 27, 2015, "consists of an email exchange between HHS staff pertaining to an incident involving an [unaccompanied child]," and that "the redacted portions cover[] a staff discussion of relevant facts and recommendations relating to possible funding and cost savings in the [unaccompanied alien children] program." *Id.* ¶ 34. The *Vaughn* index reflects these assertions and provides additional detail regarding the authors, recipients, and contents of each redacted intra-agency email. Finally, the ACF FOIA Officer's declaration attests to personal review of all records in this case, and her belief that "all reasonably segregable, non-exempt information has been released." *Id.* ¶ 36.

The Court is satisfied that HHS has "provide[d] in its declaration and *Vaughn* index precisely tailored explanations for each withheld record at issue," *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 188 (D.D.C. 2013), and that those explanations adequately display the pre-decisional and deliberative nature of each of the documents described therein.

The plaintiff appears to concede that Exemption 5 applies to the withheld information as described by the agency, but nevertheless asserts he is entitled to *in camera* review of the information withheld under Exemption 5 on two grounds. First, the plaintiff asserts a need to test the veracity of the agency's attestations, contending that a "lack of credibility is present in the case at bar" such that "the [d]efendant cannot be trusted to provide accurate descriptions of redactions listed in a *Vaughn* index." Pl.'s Opp'n at 7. In support of this contention, he cites *Judicial Watch, Inc. v. Dep't of the Army*, 402 F. Supp. 2d 241, 248 (D.D.C. 2005), in which the court conducted *in camera* review after learning that the agency had in an earlier *Vaughn* Index mischaracterized information withheld from the plaintiff. The court explained that it could not

"be sure that the defendant's error [in describing withheld information] was not repeated," and thus undertook the *in camera* review the defendant sought. *Id*. In this case, by contrast, no reason has been presented by the plaintiff or the procedural history of this case to cast any doubt on the agency's descriptions of withheld information. Accordingly, *in camera* review of the withheld information in this case is not warranted on the first ground advanced by the plaintiff.

As a second basis for *in camera* review of the withheld material, the plaintiff argues that "[t]he deliberative process privilege is unavailable when government misconduct is present," invoking what he styles as an "exception" to Exemption 5's protection for materials covered by that privilege. Pl.'s Opp'n at 7–8. In support of the existence of that purported exception, he cites *Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Housing & Urban Dev.*, 19 F. Supp. 3d 1, 14 (D.D.C. 2013), which, after explaining that "our Court of Appeals has never squarely applied [a government misconduct] exception," went on to conclude that "to preclude application of the deliberative process privilege in the FOIA context, the claimed governmental misconduct must be severe enough to qualify as nefarious or extreme government wrongdoing." *Id*. at 13–14. *Neighborhood Assistance* cites two other district court opinions finding that a "narrow[]" "government-misconduct exception" applies and can overcome the deliberative process privilege otherwise available under the FOIA. *See Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 66, 69 (D.D.C. 2012); *ICM Registry, LLC v. U.S. Dep't of Commerce,* 538 F. Supp. 2d 130, 133 (D.D.C. 2008). These cases rely, in turn, upon the D.C. Circuit's decision in *In Re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), in which the Court stated that "where there is reason to believe . . . documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied." *Id*. at 738 (internal quotation marks omitted).

This Court is not persuaded that the so-called "government misconduct" exception suggested in *In Re Sealed Case* applies in the FOIA context. *In Re Sealed Case* did not involve consideration of the FOIA, addressing instead the scope of the "common law" deliberative process privilege where the White House withheld documents in response to a grand jury subpoena. *See id.* at 734, 737. Nor did that decision suggest that its discussion of alleged government misconduct and the deliberative process privilege applied in the context of the FOIA. On the contrary, *In Re Sealed Case* specifically notes that any ability of the deliberative process privilege to be overcome by a demonstrated need "is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *Id.* at 737 n.5.

This reading of *In Re Sealed Case* is in accordance with an understanding of the FOIA well-established in this Circuit: Exemption 5's protection of privileged materials is not subject to the same exceptions to which the common law privilege is susceptible. As the D.C. Circuit has explained, "Exemption 5 'protects only those memoranda which would not *normally* be discoverable in civil litigation against an agency,'" and thus, the exemption protects from disclosure some materials that, if the common law privilege were at issue, might be disclosed pursuant to "case-specific exceptions." *Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009) (emphasis added) (quoting *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980)); *see also Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C. Cir. 2011) (noting under the FOIA, a party's "notes not turned over in [a] criminal trial still remain . . . work product material not ordinarily discoverable in civil proceedings" and thus protected by the FOIA, even though "[i]n criminal trials, evidentiary privileges may give way for any number of reasons"). Accordingly, the Court concludes that the government misconduct exception recognized in *In Re*

*Sealed Case* cannot overcome an otherwise valid withholding pursuant to Exemption 5.  For this reason, the plaintiff's request for *in camera* review on the ground of a government misconduct exception to Exemption 5 is rejected.

The plaintiff further contends that "a finding of bad faith is not a prerequisite to *in camera* review," Pl.'s Reply at 4, citing *Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986), in which the D.C. Circuit explained that "a trial judge may order such an inspection 'on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a *de novo* determination,'" *id.* (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)).  Yet, while district courts generally enjoy broad discretion in determining whether to conduct *in camera* review in FOIA proceedings, the D.C. Circuit has cautioned that "when the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate." *Larson*, 565 F.3d at 870 (internal quotation marks omitted); *see also ACLU v. U.S. Dep't of Justice*, 640 Fed. App'x 9, 12 (D.C. Cir. 2016) (per curiam) ("find[ing] it unnecessary to review the documents to determine whether the information has been properly withheld" given the sufficiency of the agency declaration).  In light of HHS's thorough declaration and *Vaughn* Index appropriately describing the bases for invoking the deliberative process privilege and satisfying its segregability obligations, *in camera* review is "neither necessary nor appropriate." *Larson*, 565 F.3d at 870.[6]

Consequently, this Court declines to review the redacted documents *in camera*.

## IV.    CONCLUSION

As explained above, the Court finds that the agency conducted an adequate search for records responsive to requests in Items 1 and 16–20 and appropriately invoked the deliberative

---

[6]     The ACF FOIA Officer's declaration as to the segregability of the information contained within the two documents at issue additionally satisfies the agency's segregability obligations. *See Loving*, 550 F.3d at 41.

process privilege under FOIA Exemption 5 to withhold information in a small part of the produced records. Accordingly, the agency's Motion for Summary Judgment is GRANTED.

Date: October 11, 2016

_____

BERYL A. HOWELL
Chief Judge